Certifying the law.
Will Phillips was indicted for the willful murder of John Will Thacker. There was a mistrial, and the commonwealth has appealed to obtain a correct exposition of the law for the guidance of the circuit court on another trial. Criminal Code, secs. 335-337; Commonwealth v. Matthews, 89 Ky. 287,12 S.W. 333, 11 Ky. Law Rep. 505; Commonwealth v. Hourigan, 89 Ky. 305,12 S.W. 550, 11 Ky. Law Rep. 509; Commonwealth v. Robinson, 84 S.W. 319, 27 Ky. Law Rep. 14.
James C. Justice and Marvin Williamson were deputy sheriff's of Pike county. A warrant for the arrest of Will Phillips on a charge of murder was placed in their hands for execution. They proceeded to his home in Pike county and arrested him. In a dresser drawer in his dwelling they found a pistol and several cartridges loaded with leaden bullets. The prisoner had shown them where the pistol and cartridges loaded with lead were located, but made no mention of other cartridges. Phillips went out to get his automobile, and Justice observed and searched a pair of old overalls hanging in the hall behind the door, and in one of the pockets he found three 38-calibre cartridges loaded with copper jacketed bullets. The pistol was a 38-caliber, six-shooter, and was not loaded at the time it was found. The deceased had been shot three times with 38-caliber copper jacketed bullets. The officer retained the pistol *Page 119 
and all the cartridges. The search and seizure occurred after the defendant was lawfully arrested and in custody. The overalls in which the copper jacketed cartridges were found hung in a hall of the home of defendant, immediately adjoining the room where the pistol was pointed out to them by him.
The court heard the testimony of Justice out of the presence of the jury, and thereupon sustained the defendant's objection, refused to permit its introduction, and excluded from the jury the exhibits, consisting of the three cartridges with copper jacketed bullets found in the overalls.
The relevancy and materiality of the evidence is not disputed, but the decision of the trial court was based upon the ground that the officers acted without a search warrant, and so procured the evidence in violation of the prisoner's constitutional rights.
It is insisted for the appellee that the evidence was properly excluded by the trial court on the authority of Youman v. Commonwealth, 189 Ky. 152, 224 S.W. 860, 13 A.L.R. 1303. The case is not controlling on the point now presented. Youman was not arrested, and the search of his premises was made in his absence, without his consent, and without a search warrant. At least twice in the opinion explicitly, and perhaps other times by reference to authorities, the opinion recognized the right of an officer to make a search of the person of a prisoner lawfully in custody. Referring to that opinion in Brent v. Commonwealth, 194 Ky. 504, 240 S.W. 45, this court emphasized the fact that the case is authority only on the point then presented and decided. In a long list of cases, covering a variety of circumstances, this court has upheld the right of officers to search persons lawfully arrested. Armstrong v. Commonwealth, 190 Ky. 217, 227 S.W. 162; Banks v. Commonwealth, 190 Ky. 336, 227 S.W. 455; Turner v. Commonwealth, 191 Ky. 825, 231 S.W. 519; Commonwealth v. Riley, 192 Ky. 153, 232 S.W. 630; Ash v. Commonwealth, 193 Ky. 452, 236 S.W. 1032; Helton v. Commonwealth, 195 Ky. 678,243 S.W. 918; Ballou v. Commonwealth, 195 Ky. 722, 243 S.W. 922; Patrick v. Commonwealth, 199 Ky. 83, 250 S.W. 507; Cook v. Commonwealth, 193 Ky. 417, 236 S.W. 943; Lewis v. Commonwealth, 197 Ky. 453, 247 S.W. 749; Commonwealth v. Johnson, 206 Ky. 701, 268 S.W. 345; Elswick v. Commonwealth,202 Ky. 703, 261 S.W. 249; *Page 120 
Ferrell v. Commonwealth, 204 Ky. 548, 264 S.W. 1078; Ragland v. Commonwealth, 204 Ky. 598, 265 S.W. 15; Patterson v. Commonwealth, 206 Ky. 258, 267 S.W. 160; Billings v. Commonwealth, 223 Ky. 381.
In the Turner case at page 830 of the official report (231 S.W. 521), this court said, referring to the opinion in Youman v. Commonwealth, supra:
 "An examination of that case will show that it distinctly recognizes, as a long-established exception to the rule against search and seizure, that an arresting officer has the right without a warrant to search the person of a prisoner lawfully arrested, and take from his person and hold for the disposition of the court any property connected with the offense for which he is arrested and which may be used as evidence against him."
In Commonwealth v. Riley, 192 Ky. 153, at page 158,232 S.W. 630, 632, it was remarked:
 "All the books and all the cases agree, including the Youman case, that evidence found by searching the defendant when he is lawfully arrested may be used against him and that such evidence does not come within the constitutional inhibitions against 'unlawful search and seizure' of either one's premises or his person."
Similar expressions equally comprehensive and emphatic may be found in numerous opinions of this court, including those above noted.
But it is insisted for appellee that, granting the right to search the person of a prisoner lawfully arrested, and the particular place in the room pointed out by him, yet the officer had no right to go further and search other parts of the room or building, or articles therein, although in the immediate possession and control of the prisoner.
The right of arresting officers to search the person, premises, and possessions of the accused when legally arrested and to discover and seize the fruits or evidences of crime has been recognized under the English and American law from the earliest times. Weeks v. United States, 232 U.S. 383,34 S. Ct. 341, 58 L.Ed. 652, L.R.A. 1915B, 834, Ann Cas. 1915C, 1177. *Page 121 
In Smith v. Jerome, 47 Misc. Rep. 22, 93 N.Y. S. 202, it is said:
 "The police have the power and it is also their duty to search the person of one lawfully arrested, and also the room or place in which he is arrested, and also any other place to which they can get lawful access, for articles that may be used in evidence to prove the charge on which he is arrested. We have no statute defining this power or prescribing this duty, but the ends of justice require that they should exist, and they have been exercised under the common law from time immemorial. The authorities on this head seem to be few, but only because the thing has seldom if ever been questioned. We have at least one such authority in this state (Houghton v. Bachman, 47 Barb. 388), and there are several in England."
It is the general rule, upheld by the great majority of cases upon the subject, that a peace officer while executing a criminal process may take possession of articles for the purpose of evidence and hold them to that end, and the right applies and extends to the defendant's house and premises where apprehended as well as to his person. Getchell v. Page, 103 Me. 387,69 A. 624, 18 L.R.A. (N.S.) 253, 125 Am. St. Rep. 307; Collins v. Lean, 68 Cal. 284, 9 P. 173; United States v. Wilson, (C. C.) 163 F. 338; Closson v. Morrison, 47 N.H. 483, 93 Am. Dec. 459; People v. Chaigles, 237 N.Y. 193,142 N.E. 583, 32 A.L.R. 676.
The Supreme Court of the United States has repeatedly affirmed the principle in terms as comprehensive and cogent as the language affords.
In Carroll v. U.S., 207 U.S. 132, 45 S.Ct. 280,69 L.Ed. 543, 39 A.L.R. 790, Chief Justice Taft thus affirmed the doctrine:
 "When a man is legally arrested for an offense, whatever is found upon his person or in his control which it is unlawful for him to have and which may be used to prove the offense may be seized and held as evidence in the prosecution."
In Agnello v. U.S. 269 U.S. 30, 46 S.Ct. 4, 70 L.Ed. 145, it is said in substance that the right without a search warrant contemporaneously to search persons lawfully arrested and to search the place where the arrest *Page 122 
is made in order to find and seize things connected with the crime as its fruits, or as the means by which it was committed, as well as weapons and other things, is not to be doubted.
Such searches and seizures usually appertain to and attend arrests of accused persons.
It is clear that the officer not only has the lawful power to search the person, premises, and possessions of the prisoner when lawfully arrested in order that he may gather such evidence as exists, but he would be blameworthy if he failed to do so. Patrick v. Commonwealth, 199 Ky. 83, 250 S.W. 507; Getchell v. Page, 103 Me. 387, 69 A. 624, 18 L.R.A. (N.S.) 253, 125 Am. St. Rep. 307; Smith v. Jerome, 47 Misc. Rep. 22;93 N.Y. S. 202. The maintenance of public order and the protection of society by the efficient prosecution of criminals require that the right be rigorously exercised.
It is obviously absurd to argue that an officer might properly search the trousers which the prisoner wore when arrested, but could not search the overalls that hung on the wall of the home where it occurred; and to say that the evidence so obtained is proper in the one instance and inadmissible in the other is a refinement too attenuated for the practical administration of justice. No reason has been assigned for any such serious limitation on the rights of the public, and there is nothing in the history, language or purpose of the constitutional provision against unreasonable searches and seizures to require any such conclusion. When the person of a prisoner is lawfully apprehended, he may and should be searched, and his papers, premises, possessions, as well as places and things under his immediate control, are subject to the same right. Cole v. Commonwealth, 201 Ky. 543,257 S.W. 713; People v. Case, 220 Mich. 379, 190 N.W. 289, 27 A.L.R. 687; Voorhies v. Faust, 220 Mich. 155, 189 N.W. 1006, 27 A.L.R. 706, annotation at page 716; Carroll v. U.S.,267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; 39 A.L.R. 790, annotation at page 818.
This court has been as diligent as any other in enforcing the constitutional right of all persons to be secure against unreasonable searches and seizures and no relaxation of the established rules in that respect would be justified. But it has never been the law, and with safety could not be, that a prisoner lawfully arrested, as well as the place where he lived and was apprehended, or the articles under his control, were not subject *Page 123 
to search for the purpose of protecting the officers from possible injury, or for preventing the possible escape of the prisoner, or for securing evidence to be used against him, or for any legitimate purpose connected with the circumstances.
The right of search and seizure under the circumstances detailed in this opinion is sustained, as we have seen, by the overwhelming weight of authority. It is equally supported by reason and necessity. A fair test of the reasonableness of any proposition or practice is the experience and usage of mankind respecting it. That test fully justifies the course of arresting officers in searching the person, as well as the immediate premises and possessions, of prisoners lawfully apprehended with or without a warrant. The reasonableness of the practice is vindicated by a fact of even higher dignity, and that is the universal assent of the legal profession. Compare Reed v. Maley, 115 Ky. 816, 74 S.W. 1079, 25 Ky. Law Rep. 209, 62 L.R.A. 900, 2 Ann. Cas. 453. The right has been asserted and permitted to pass unquestioned in a vertiable multitude of cases, with the sanction of both the judicial and legislative branches of the state and federal governments, throughout our history, during which time constitutional rights have received the most exhaustive and enlightened consideration and attained in the respect of mankind the highest favor ever accorded them.
In this case the appellee consented for the bureau in his house to be searched, which would seem to include the right to search the entire premises. Richardson v. Commonwealth, 205 Ky. 434, 266 S.W. 1; Bruner v. Commonwealth, 192 Ky. 386,233 S.W. 795; Gray v. Commonwealth, 198 Ky. 612, 249 S.W. 769; Smith v. Commonwealth, 197 Ky. 195, 246 S.W. 449. His consent for the officers to search a part of the premises necessarily included the right to make the search effective and complete. But, as we have seen, his consent was not necessary to authorize the officers to make the search they made on the occasion in question.
The circuit court erred in excluding the testimony of Justice as to what he found in the house of the defendant when he was arrested, and that testimony together with the exhibits found in the search, should be admitted in evidence on another trial of appellee.
The law is accordingly certified for the guidance of the circuit court. *Page 124